**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| G.O.A.T. CLIMB AND CRYO, LLC, an Illinois Limited Liability Company, | ) ) ) | |
| | ) | Case No. 20-cv-05644 |
| Plaintiff, | ) | |
| | ) | Hon. |
| v. | ) | |
| | ) | |
| TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**COMPLAINT (INCLUDING CLASS ACTION COMPLAINT IN THE ALTERNATIVE)**

Plaintiff G.O.A.T. Climb and Cryo, LLC ("Plaintiff" or "G.O.A.T."), by and through its attorneys, Fuksa Khorshid, LLC, and on behalf of all those similarly situated (with respect to Counts IV and V seeking a rebate of premium on behalf of a Nationwide Class, in the alternative under Fed. R. Civ. P. 8(d)(2) and (3)), states and alleges its Complaint against Twin City Fire Insurance Company, a subsidiary of The Hartford Financial Services Group, Inc. ("Defendant" or "Defendant Hartford") as follows:

**NATURE OF THE ACTION**

1.      Plaintiff is a small business– a fitness and recovery studio in Chicago.

2.      Plaintiff asserts claims for business interruption insurance coverage under "all-risk" commercial property insurance issued and sold to them by the Defendant Hartford.  Under longstanding and bedrock principles of insurance law, Plaintiff is entitled to payment under those policies for business income losses suffered as a direct result of state, municipal and local executive shutdown orders and restrictive executive reopening orders ("Closure Orders") that caused direct physical loss or damage to its property by physically impairing, detrimentally altering, and rendering it nonfunctional or only partially functional as the business and institution it was formerly.

3.      Prior to the Closure Orders, Plaintiff's business was vibrant, bustling and successful.  But the Closure Orders brought an end to all of that activity by imposing direct physical restrictions that

impaired Plaintiff's property and rendered it nonfunctional for its intended purpose. By altering the physical premises – all of which is critical to Plaintiff's operations – its establishment was materially and detrimentally altered by the Closure Orders. Under the Closure Orders, Plaintiff had to close or block off sections of their physical space, create or install barriers, manipulate fixtures and other equipment into nonfunctional arrangements, place physical markers on floors and walls, and redesign routes for entrance and egress. Vast amounts of square footage in its space – many painstakingly designed to maximize the customer's experience and the business' revenues – was lost, detrimentally altered, and rendered nonfunctional for its intended purpose.

4. To protect its business from risk, Plaintiff purchased a business owner's policy for commercial property from Defendant Hartford. This 100+ page Policy contract was authored and issued by Defendant and contains numerous promises to pay Plaintiff – also known as "coverages" – for a broad range of losses that the Plaintiff might suffer including business interruption. A true and correct copy of the business owner's policy (the "Policy") is attached hereto as Exhibit A and incorporated by reference herein (A1 – policy from April 1, 2019-April 1, 2020; A2 – policy from April 1, 2020-April 1, 2021).

5. At the time Defendant underwrote and sold the Policy, it understood and expected that it would be insuring this property as a fully functioning and operational business. Defendant knowingly calculated Plaintiff's business interruption premiums based in material part on the revenue it expected Plaintiff to generate as a fully functioning and operational business. Defendant is fully aware that Plaintiff's business and property has been physically impaired by the Closure Orders and that Plaintiff lost the means to generate that revenue – *i.e.*, that Plaintiff suffered direct physical loss of and damage to its insured property. Defendant is fully aware that with no operations or partial operations, a universe of risks for which it would pay business interruption and other claims are now mitigated or entirely absent. A shuttered kitchen (for example) has no fires. When (for example) gyms, bars, retail floors and beauty parlors have no customers (or customers limited to fractional capacity) there are no or fewer other kinds of claims under the Policy. Defendant's claims payout records since March 1, 2020 (and compared to prior years) will bear out what it has saved. Yet Defendant has continued to charge and accept full premium payments from

insureds as if insured property remained fully functional and operational. This is the basis for an unjust enrichment claim against the Defendant, which must be upheld in the event that coverage is denied. This unjust enrichment claim is pled in the alternative pursuant to Fed. R. Civ. P. 8(d)(2) and (3) on behalf of a Fed. R. Civ. P. 23(b)(3) Nationwide Class of Hartford's policyholders whose businesses were in any manner impaired or constrained by Closure Orders, and is found in Count IV. This same misconduct also supports a claim (Count V) by Plaintiff and the Nationwide Class for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq ("ICFA") and the similar laws of other states where Defendant sells insurance.

6.    Stated in plain terms, Defendant can't "have its cake and eat it too" – either it needs to pay Plaintiff on business income losses it sustained due to Closure Orders, or, if Hartford prevails against coverage, then this Plaintiff and all others similarly situated in a Nationwide Class must receive a rebate of premium for the windfall that Hartford kept for itself by reduced claims due to Closure Order shutdowns, partial operations mandates and other constraints. This is a prime example of why Fed. R. Civ. P. 8(d)(2) and (3) exist to render complete justice to the aggrieved. As set out in Counts IV and V, this premium rebate claim is eminently appropriate for class adjudication, and these are claims Defendant must face if it prevails on its arguments against coverage.

7.    Despite the fact that Defendant has accepted Plaintiff's insurance premium payments, Defendant has summarily denied Plaintiff's claims for coverage arising from government-ordered interruption and closure of its business, in breach of Defendant's contractual obligations under the Policy. Defendant denied Plaintiff's claims with a cursory boilerplate letter sent (on information and belief) in substantially similar form to all of Defendant's insureds, without any reasonable explanation or individualized investigation or consideration. A true and correct copy of this form denial letter is attached hereto as Exhibit B and incorporated by reference herein.

8.    As Defendant Hartford is well aware, "all risk" commercial property policies cover all possible risks of any kind or description, unless specifically excluded. Unlike "enumerated perils" property insurance, which covers only specified causes of loss, all-risk property insurance provides business insureds

3

with the comfort of knowing that even unprecedented and unanticipated risks of loss are covered. Due to the breadth of coverage, Plaintiff paid a substantial premium for this type of insurance. Here, the Closure Orders are clearly within the scope of "all risks" covered by the Policy. This basis for coverage is referred to herein as the "Closure Order Basis for Coverage" and is one of two major bases of coverage alleged by the Plaintiff herein. Fed. R. Civ. P. 8(d)(2), (3).

9.      As set forth at length herein, Plaintiff has been forced to file this action for a declaratory judgment in response to Defendant's misconduct and refusal to meet its obligations under the Policy, in order for this Court to establish that Plaintiff is entitled to receive the benefit of the insurance coverage it purchased. Plaintiff seeks reimbursement and indemnification of the business losses it has sustained, as well as all damages arising out of Defendant's breach of contract and Defendant's bad faith claims handling under 215 ILCS 5/155. As pled in more detail herein, Plaintiff poses two major bases for coverage, one of which is known as the "Closure Order Basis for Coverage" and the other of which is the "Scientific Basis for Coverage." Fed. R. Civ. P. 8(d)(2), (3). Finally, Plaintiff also asserts Nationwide Class action claims for unjust enrichment and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, in the alternative, as set out in Counts IV and V.

## THE PARTIES

10.      Plaintiff is a limited liability company organized and existing under the laws of Illinois with its principal place of business at 300 W. Ontario, Chicago, Illinois 60654, located in Cook County and in the Northern District of Illinois. Plaintiff conducts all of its business operations in Illinois. Furthermore, Plaintiff has two managing members, Adam Dickler with an address at 400 W. Huron, Unit 703, Chicago, IL 60654, and Lindsey Williams with an address at 520 W. Huron, Unit 306, Chicago, IL 60654.

11.      A subsidiary of The Hartford Financial Services Group, Inc., Twin City Fire Insurance Company, is an Indiana insurance company organized and existing under the laws of Indiana with its principal place of business at 501 Pennsylvania Parkway, Suite 400, Indianapolis, IN 46280. Defendant is registered with the Illinois Department of Insurance to conduct business in Illinois. Defendant specializes in both commercial and personal lines of insurance.

4

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

12.     This Court has federal subject matter jurisdiction over the claims set forth in this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Plaintiff G.O.A.T. is incorporated in and has its principal place of business in Illinois.  Its members also reside in Illinois. Accordingly, Plaintiff is a citizen of Illinois.

14.     Twin City Fire Insurance Company is incorporated in and has its principal place of business in Indiana.  Accordingly, Twin City Fire Insurance Company is a citizen of Indiana.

15.     The amount in controversy in this action is well in excess of $75,000.  Plaintiff G.O.A.T. was entirely shut down and lost business income at the rate of approximately $40,000 per month from March 22, 2020 to June 3, 2020.  Even after Plaintiff opened in limited capacity (appointments for recovery sessions only) on June 3, 2020, it still lost income at the rate of approximately $16,000 per month. As of the date of filing of this action, Plaintiff has sustained at least $140,000 in business income losses that continue to mount.  Additionally, as set forth in Count III below, Plaintiff makes a claim for statutory bad faith under 215 ILCS 5/154.6, which entitles Plaintiff to statutory penalties and attorneys' fees of an additional $60,000 or more as of the time of filing of this action.  Therefore, the amount in controversy in this action at time of filing is well in excess of $75,000.

16.     This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because Counts IV and V allege class action claims where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs."  Plaintiff is informed and believes that Defendant Hartford wrote over $8 billion in commercial lines insurance premiums for 2019, so a premium rebate of less than one percent ($80 million) would fulfill this amount in controversy requirement many times over.

*Personal Jurisdiction*

17.     The Court may exercise general personal jurisdiction over Defendant due to the fact that Defendant's activities in Illinois are such that Defendant may fairly be regarded as submitting itself to jurisdiction of the courts in Illinois.  Defendant exercises substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, and seeking additional business in Illinois.

18.     The Court may exercise specific personal jurisdiction over Defendant in this matter, as Plaintiff's claims arise out of Defendant's activities in Illinois.

19.     Further, Defendant has submitted to jurisdiction in the Northern District of Illinois pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within this district at the time of contracting; and (c) making a contract substantially connected with this district and Illinois.  *See* 735 ILCS 5/2-209(1), (4), (7).

20.     This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the insurance Policy concerning Plaintiff's loss of business arising from the Closure Orders.

*Venue*

21.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is a resident in this district by virtue of being subject to the court's personal jurisdiction with respect to this action.

22.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

23.     G.O.A.T. is a work-out and recovery studio committed to helping people stay healthy, relieve soreness, and promote overall well-being. Started by a certified fitness instructor and an oncologist, G.O.A.T. was founded as a revolutionary health and fitness destination for Chicago residents. The nature

of G.O.A.T.'s business requires the utilization of its physical business premises and the specialized equipment located therein to provide services that can only be performed by direct personal contact with its clients. G.O.A.T.'s business was completely shut down until June 3, 2020 when it opened only for recovery services. By offering only certain services, G.O.A.T. is mitigating its damages to the best of their ability. The fitness classes are unable to operate because of the nature of in-person fitness classes. Clients will not feel or be safe in these classes if they are offered under current circumstances. G.O.A.T.'s normal operations were brought to an immediate halt and restricted to only certain services which comprise a fraction of G.O.A.T.'s monthly revenue.

**The Policy and the Coverages**

24.     Like many other reputable and honest small businesses, G.O.A.T. conducted its business responsibly and obtained business insurance for its commercial property to protect itself and others from a myriad of risks.

25.     Defendant aggressively markets and sells policies to small businesses, advertising such services as "When It Comes to Small Business Insurance, We've Got Your Back."[1]

26.     Plaintiff purchased its Hartford Policy through an agent, The Viti Companies, Inc. located at 445 Sheridan Rd., Highwood, IL 60040. Plaintiff's Policy was effective from April 1, 2019 – April 1, 2020 and April 1, 2020 – April 1, 2021. Both are practically identical in relevant part. Plaintiff paid a premium to Defendant for the coverages in this Policy. (Ex. A).

27.     The Policy is what is known in the insurance industry as an "all risk" policy that provides broad coverage for losses sustained from *any cause*.

28.     In the Policy, Defendant promised to pay Plaintiff for "actual loss of Business Income you sustain due to the necessary suspension of your 'operations'" when Plaintiff experienced a "direct physical loss of or physical damage" to its business premises. (Ex. A1, p. 33; Ex. A2, p. 36) (Special Property Coverage Form SS 00 07 07 05, p. 10 of 25).

---

[1] The Hartford, https://www.thehartford.com/small-business-insurance (accessed August 5, 2020).

29.     Defendant further promised in the Policy to pay Plaintiff for "actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of [risk of direct physical loss] in the immediate area of your 'scheduled premises.'" (Ex. A1, p. 34; Ex. A2, p. 37) (Special Property Coverage Form SS 00 07 07 05, p. 11 of 25).

30.     In the Policy, Defendant promised to provide Plaintiff with broad coverage for lost "business income" plus "extra expense" sustained during periods of shutdown and beyond.  (Ex. A1, p. 33; Ex. A2, p. 36) (Special Property Coverage Form SS 00 07 07 05, p. 10 of 25).

31.     The Policy contained purported exclusions including "Pollution" exclusion (Ex. A1, p. 40; Ex. A2, p. 43) (Special Property Coverage Form SS 00 07 07 05, p. 17-18 of 25) and "Fungi, Bacteria or Virus Exclusion" (Ex. A1, p. 90; Ex. A2, p. 94) (Special Property Coverage Form SS 40 93 07 05). These exclusions are impermissibly overbroad and unenforceable. Moreover, these exclusions introduce ambiguities into the Policy that must be construed against Hartford.

**Defendant's Systematic Denial of Claims**

32.      Despite Defendant's promises in the Policy to pay for lost business income and extra expenses incurred by Plaintiff in circumstances such as these, Defendant has denied all such claims.

33.     Defendant's response contrasts its promises on its website that "When It Comes to Small Business Insurance, We've Got Your Back."[2] Defendant's website does not discuss what it is doing to help businesses through the COVID-19 crisis. Instead, it merely directs insureds, such as Plaintiff, to general tips on rebooting operations. It also states that most business interruption insurance will not cover losses due to a virus, however "[e]very situation…will be evaluated on a case-by-case basis and reviewed based on the underlying facts, policy language and applicable law."[3] Hartford's self-serving statement is inconsistent with its actions.  Defendant has not fulfilled its promises on its website. Rather, Defendant is retaining, enjoying, and investing the premium / claims payment windfall it has achieved from profoundly

---

[2] The Hartford, https://www.thehartford.com/small-business-insurance (accessed August 5, 2020).
[3] The Hartford, https://www.thehartford.com/coronavirus/businesses (accessed August 5, 2020).

lower commercial policy claims by its commercial insureds (members of the Nationwide Class) whose businesses are shuttered or reduced in operations by Closure Orders.

34.     Instead of properly investigating Plaintiff's factual scenario, Defendant's approach to these insurance claims has been to leave its insureds, the taxpayers, and society as a whole to bear the economic burden of Hartford's refusal to honor its own obligations under its policies.  And Defendant's portfolio managers have been strategically investing the resulting windfall to reap even greater rewards.

35.     Defendant has designed and executed in bad faith, a systematic and consistent form and cursory denial of all claims, such as Plaintiff's claim, in order to avoid paying Defendant's obligations under the Policy.  After making its claim, Plaintiff received Defendant's cursory, form denial letter (Ex. B) which Plaintiff believes is identical in substance and form to thousands of letters Defendant has sent out to any and every insured who has made or will make a claim for losses sustained during the current crisis.

36.     Defendant failed to undertake or conduct a reasonable investigation of Plaintiff's claims under the Policy, in violation of its duties under Illinois law.

37.     Defendant fails to honor its obligations under thousands of policy contracts during the current crisis by not reviewing the facts and law for each case.

38.     Defendant's denial to Plaintiff was not only woefully inadequate, but it was based on the false and blanket assertion that there is no direct physical loss or physical damage to the business premises of Plaintiff.  (Ex. B, p. 3-6).  As set forth herein, that blanket assertion runs contrary to Illinois law, established science, and the facts.

### Federal Rule of Civil Procedure 8(d) Permits Alternative Pleading

39.     The Federal Rules of Civil Procedure embody public policy and the mandate of law that parties may both plead in the alternative, and state as many separate claims (or defenses) as they may have, regardless of consistency:

> Rule 8. General Rules of Pleading
> .   .   .
> (d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.
> .   .   .

(2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

40.     Plaintiff proffers in this case two fundamental, alternative bases for coverage: 1) **the Closure Order Basis for Coverage;** and 2) **the Scientific Basis for Coverage**. Rule 8 permits, indeed mandates, that Plaintiff may proceed with these alternative theories in the pursuit of justice.

### The Closure Order Basis for Coverage

41.     A bedrock principle of Plaintiff's case is that the Closure Orders caused direct physical loss and/or physical damage to its property. While Defendant contends that Plaintiff did not sustain "direct physical loss" or "physical damage to" property within the meaning of its Policy, the evidence at trial will show that the Closure Orders did cause direct physical loss of and physical damage to Plaintiff's property. Under any reasonable construction, the phrase "direct physical loss of or physical damage to" property is broad and would include detrimental physical effects which alter and impair the functioning of the tangible, material dimensions of property—especially where, as here, property is rendered nonfunctional for its intended purpose due to the altered appearance, shape, and other material aspects of the property. That is precisely the type of loss and damage caused by the Closure Orders.

42.     Defendant chose not to define the terms "direct physical loss" or "physical damage" in the Policy. Instead, Defendant intentionally left each of these terms undefined—even though it knew, or should have known, that these terms can reasonably be construed, and indeed have been construed by courts, more broadly than the narrow self-serving definition that they contend should provide the terms' only meaning. As undefined terms in the Policy, each of these terms must be given its plain and ordinary meaning consistent with the knowledge and expectations of an ordinary, reasonable insured.

43.     In the Policy, "loss" is used in the alternative to "damage." Thus, there is coverage provided for both "loss" and "damage," either alternatively or collectively, because "loss" coverage is different from, and in addition to, "damage" coverage. Property "loss" refers to, among other things, being deprived of a

10

property's function, while "damage" refers to, among other things, the impairment of property or a reduction in its functionality. The adjective "physical," among other things, distinguishes between the tangible, material aspects of an object and those that are purely intangible, such as sentiment, emotion, or imagination. In addition, under a plain grammatical reading of the phrase "direct physical loss of or physical damage to" property, the word "direct" can be reasonably construed as modifying only "loss" coverage—not "damage" coverage. To the extent that any language in the Policy is ambiguous, it should be construed against Defendant and in favor of coverage.

44.     Here, the Closure Orders caused both property loss and property damage by directly, physically impairing the functionality of Plaintiff's property and dispossessing Plaintiff of its tangible space. Areas blocked off, barriers erected, appearances altered, furniture moved, fixtures altered, spaces shuttered, floors marked, plexiglass mounted—these are but some examples of the direct physical loss and damage Plaintiff's property has incurred.

45.     The Plaintiff understood, expected, and believed that their Policy would cover the direct physical loss of or physical damage to their property that it suffered as a direct result of the Closure Orders. This understanding and expectation is both subjectively and objectively reasonable. Defendant cannot now redefine or narrow the meaning of physical loss or damage—or any other undefined terms in the Policy—to support a denial of coverage in these unprecedented circumstances.

46.     Because there is a reasonable construction of these terms that provides coverage to Plaintiff for their business interruption claims—and based on bedrock insurance law principles requiring policy terms to be construed broadly in favor of coverage for Plaintiff—Defendant must pay Plaintiff's claims.

47.     Although the Policy contains purported "Pollution" and "Fungi, Bacteria or Virus Exclusion" exclusions, those exclusions do not and cannot function against claims for physical loss and damage caused by Closure Orders, not by a virus.  Any other reading of such an exclusion is impermissibly overbroad and unenforceable.

**The Scientific Basis for Coverage**

48.     Reports of a novel Coronavirus ("COVID-19") pandemic emerged out of Wuhan, China in early 2020.  The first case in the United States was confirmed on January 20, 2020, followed rapidly by many others, culminating in a medical and economic disaster.[4]

49.     By March 15, 2020, Illinois Governor J.B. Pritzker, exercising his emergency powers under state law, ordered many public gathering places closed in an effort to slow or stop the spread of COVID-19. On March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close.  Similar orders were issued by Chicago Mayor Lori Lightfoot pursuant to her emergency powers under state law. Many similar orders have followed, all prohibiting or severely curtailing the use of business property and premises.

50.     Illinois law, science, and the facts contradict Defendant's cursory claims denials. Illinois courts have held that dangerous substances can and do cause "direct physical loss or damage" under commercial insurance policies.  *See e.g.*, *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622, 625–26 (Ill. App. Ct. 1999), *as modified on denial of reh'g* (Dec. 3, 1999).

51.     COVID-19 may well be the most dangerous physical substance to emerge upon humankind to date during the 21st century. The danger of the presence of COVID-19 on a surface or in the air at a premises renders that premises potentially fatal and directly physically affected, damaged, and unfit for human use.  Like asbestos, COVID-19 can linger in the air or on surfaces (including equipment and air ducts on a business premises) and endanger human life.  Unlike inanimate asbestos (but just like a spreading fire), COVID-19 can reproduce readily and expand its direct physical impact by infecting areas and persons quickly.  Unlike inanimate asbestos, its direct physical impact cannot be encapsulated or contained on a premise.  At the same time, there are no readily available and easy to administer tests to determine if COVID-19 exists on a property and no vaccine to slow or stop its spread, meaning its physical presence has a profoundly dangerous impact.

---

[4] New England Journal of Medicine, March 5, 2020 https://www.nejm.org/doi/full/10.1056/NEJMoa2001191.

52.     Hartford essentially argues that because COVID-19 cannot be seen with the naked eye or is "invisible," that it can have no direct physical impact.

53.     COVID-19 physically exists.

54.     COVID-19 has a direct physical impact.

55.     COVID-19 alters property in appearance, shape, color, or other material dimensions.

56.     COVID-19 can be seen with an electron microscope to alter property in appearance, shape, color, or other material dimension.[5]

57.     This is an electron microscope image[6] of COVID-19 that depicts its physical existence:



58.     Hartford's arguments against coverage that COVID-19 causes a direct physical loss or damage to property (Ex. B, p. 3-6) rejects the germ theory of disease proven more than a century ago by Louis Pasteur (1864).  The germ theory of disease states that microscopic pathogens, which include viruses, too small to see without magnification, do physically exist.  Due to their physical existence, viral pathogens

---

[5] https://www.sciencealert.com/this-is-what-the-covid-19-virus-looks-like-under-electron-microscopes
[6] https://www.sciencealert.com/this-is-what-the-covid-19-virus-looks-like-under-electron-microscopes

can move from the physical environs of property, invade humans and other living hosts, and cause fatal disease.

59. Emerging research and recent reports from the CDC indicate that the COVID-19 pathogen strains physically impact and infect and can stay alive on surfaces for at least 17 days.[7] Thus, a core scientific and epidemiological concept of the Closure Orders (and the loss of business property they mandate) is the necessary assumption that COVID-19 is physically and impactfully present on the surface of every premises and will be transmitted, resulting in harm and/or death.[8] This science is fundamental to the Closure Orders.[9]

60. Government authorities on the federal, state, and local levels, including those in the jurisdiction in which the Plaintiff is located, have based their orders on the scientifically supported presumption that COVID-19 exists at all business premises.[10]

61. Government authorities issued Closure Orders that mandated the shutdown of Plaintiff's business.

62. The complete shutdown of non-essential businesses, social distancing rules, mandatory masks, partial suspensions of other businesses, and many other elements underscore the scientific and governmental assumption that COVID-19 has a direct physical impact on premises everywhere. While economically devastating, this precept is a common theme to all of the Closure Orders in the United States.[11] The Closure Orders aim to save lives by "flattening the curve."[12]

---

[7] https://www.cnbc.com/2020/03/23/cdc-coronavirus-survived-in-princess-cruise-cabins-up-to-17-days-after-passengers-left.html
[8] Centers for Disease Control and Prevention, *Social Distancing, Quarantine and Isolation*, Coronavirus Disease 2019 (COVID-19) (April 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html; Harlan M. Krumholz, *If You Have Coronavirus Symptoms, Assume You Have the Illness, Even if You Test Negative*, The New York Times (April 1, 2020), https://www.nytimes.com/2020/04/01/well/live/coronavirus-symptoms-tests-false-negative.html.
[9] *When Could Things Reopen? How each State is Responding to COVID-19*, National Public Radio (April 9, 2020), https://www.npr.org/2020/03/12/815200313/what-governors-are-doing-to-tackle-spreading-coronavirus.
[10] *COVID-19 Expert Reality Check*, John Hopkins Bloomberg School of Public Health (April 6, 2020), https://www.globalhealthnow.org/2020-02/coronavirus-expert-reality-check.
[11] Harvey V. Fineberg, *Ten Weeks to Crush the Curve*, New England Journal of Medicine (April 1, 2020), https://www.nejm.org/doi/full/10.1056/NEJMe2007263?query=featured_coronavirus.
[12] Kathy Katella, *5 Things Everyone Should Know About the Coronavirus*, Yale Medicine (April 13, 2020), https://www.yalemedicine.org/stories/2019-novel-coronavirus/.

14

63.     Hartford's arguments against coverage that a virus cannot cause direct physical loss or damage are contrary to well-established and peer-reviewed science developed and accepted over the past 156 years.  Hartford's arguments also ignore current, cutting-edge science about COVID-19 that is saving lives in America today.

64.     Hartford failed to investigate, consider or even attempt to understand the scientific reasoning and basis of the Closure Orders, with which Plaintiff was required to comply, leading directly to Plaintiff's business income and other losses.

65.     In discovery and at trial, Plaintiff will present scientific evidence to support that COVID-19 causes a direct physical impact (including altering property in one or more of "appearance, shape, color or other material dimension") and to enable a jury to justly and fairly determine the controversies created by Hartford's coverage positions and denials. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**Defendant Owes Business Income Loss Coverage**

66.     Plaintiff suffered a complete loss of and damage to its business premises under the Closure Orders.  Plaintiff suffered a direct physical loss and damage to its fitness and recovery studio and the business premises that enabled it to do its business. Opening in limited capacity is a mitigation of these losses that has allowed at best minimal revenue.

67.     Under well-accepted legal and scientific principles Plaintiff sustained "a direct physical loss of or physical damage to property at the 'scheduled premises,'" Defendant owes coverage for the resulting Business Income losses.  (Ex. A1, p. 33; Ex. A2, p. 36) (Special Property Coverage Form SS 00 07 07 05, p. 10 of 25).

**Defendant Owes Civil Authority Coverage**

68.     In the alternative, Fed. R. Civ. P. 8(d), the Closure Orders were an "order of a civil authority" that prohibited Plaintiff's "access to [its] 'scheduled premises'" to use for its business purposes. (Ex. A1, p. 34; Ex. A2, p. 37) (Special Property Coverage Form SS 00 07 07 05, p. 11 of 25). Thus, Plaintiff suffered a complete loss of access to its business premises under the Closure Orders.

69.     Because the Closure Orders prohibited access to every "non-essential" business in Illinois, access to "the immediate area of your 'scheduled premises'" was prohibited by governmental order encompassing many locations.  (Ex. A1, p. 34; Ex. A2, p. 37) (Special Property Coverage Form SS 00 07 07 05 p. 11 of 25).

70.     Moreover, the Closure Orders were a response to "risks of direct physical loss" with dangerous physical conditions threatening to human life immediately near Plaintiff's business.  (Ex. A1, p. 25; Ex. A2, p. 28) (Special Property Coverage Form SS 00 07 07 05, p. 2 of 25). G.O.A.T. is located at 300 W. Ontario St. in Chicago, and therefore less than one mile from Northwestern Memorial Hospital at 251 E. Huron St., Chicago, IL 60657.

71.     This proximity of Plaintiff's premises to a health care facility, where persons suffering (and on information and belief, dying) from COVID-19 were located, is just one among many facts that Hartford would have discovered had it properly investigated Plaintiff's claims before making its form denials.[13]

72.     COVID-19 can also spread on particulate matter in the air.  Plaintiff's business premises is in an urban area with pollution in the air.[14]  As a result, COVID-19 was spread throughout other locations that are in the immediate vicinity of Plaintiff's premises.[15]

73.     Therefore, Plaintiff has sustained business income losses: a) by action of civil authority prohibiting access to its fitness and recovery studio; b) because of dangerous COVID-19 in the immediate vicinity of Plaintiff's actual premises; and, c) as a result of COVID-19 creating a dangerous physical condition to which civil authority responded, Defendant owes coverage under Civil Authority Coverage. (Ex. A1, p. 34; Ex. A2, p. 37) (Special Property Coverage Form SS 00 07 07 05, p. 11 of 25).

---

[13]According to Google, of which this Court can take judicial notice, the distance is 0.8 mile, https://www.google.com/maps/dir/300+W+Ontario+St,+Chicago,+IL+60654/Northwestern+Memorial+Hospital+Emergency+Department,+East+Huron+Street,+Chicago,+IL/@41.8937528,-87.6331253,16z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x880e2cb4fd9d03bb:0x4c6eb92c5322cae4!2m2!1d-87.6358571!2d41.8933689!1m5!1m1!1s0x880e2cab2cf13361:0x96e6797ccd47269c!2m2!1d-87.6216388!2d41.8943406!3e2
[14]https://www.usatoday.com/story/news/health/2020/04/27/coronavirus-found-air-pollution-particles-preliminary-study-finds/3033646001/
[15]https://www.chicagotribune.com/coronavirus/ct-viz-covid-19-cases-by-zip-code-20200407-aikakoyycje4fbqvferzjffkg4-htmlstory.html

**Defendant's Purported Pollution and Virus Exclusions Fail**

74.     Moreover, to the extent that Defendant may attempt to rely on a "Pollution" exclusion (Ex. A1, p. 40; Ex. A2, p. 44) (Special Property Coverage Form SS 00 07 07 05, p. 17-18 of 25) and "Fungi, Bacteria or Virus Exclusion" (Ex. A1, p. 90; Ex. A2, p. 94) (Special Property Coverage Form SS 40 93 07 05), those exclusions are ineffective for numerous reasons.

75.     First, Defendant's Policy grants coverages including those listed above as well as Limited Fungi, Bacteria or Virus Coverage (among others) and then impermissibly attempts to take coverage away by hopelessly overbroad purported exclusionary language, which introduces ambiguity into the Policy that must be construed against Defendant.

76.     As alleged above, under the Closure Order Basis for Coverage, these exclusions do not and cannot function as against claims for physical loss and damage caused by Closure Orders, not by a virus or pollution.  Any other reading of such an exclusion is impermissibly overbroad and unenforceable.

77.     Secondly, even if a virus or pollution exclusion were somehow enforceable, it must be narrowly construed under Illinois law.  The following illustrates a non-exclusive list of why Defendant's purported exclusions fail as to all theories of coverage, including the Scientific Basis for Coverage:

    a.  "It is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (Ill. App. Ct. 2006).

    b.  When an insurer relies upon exclusionary policy language to deny or limit coverage, the language's application to the facts must be clear and free from doubt. *Cohen Furniture Co. v. St. Paul Insurance Co. of Illinois*, 214 Ill. App. 3d 408, 412–13 (Ill. App. Ct. 1991).  The language here is neither clear nor free from doubt given the language of the Policy granting broad and numerous coverages, including for virus, when weighed against the facts and science and all of the issues put into contention by the Closure Orders compelling Plaintiff's shutdown, and Defendant's factual denials that any of this presents "direct physical loss or physical damage."

    c.  In situations where insurance policy language is ambiguous or uncertain, then that language must be construed in favor of the insured and against the insurer who wrote the policy language at issue. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (Ill. 1992).

    d.  When a question arises as to coverage where more than one cause contributed to a loss, some of which are covered and some of which may be excluded under a policy, courts

will narrowly construe the exclusion language, as it is in derogation of coverage. *Bozek v. Erie Insurance Group*, 46 N.E.3d 362, 368 (Ill. App. Ct. 2015).

78.     Here, the factual and scientific evidence to be presented at trial will demonstrate that the dominant cause of the losses suffered by the Plaintiff are the Closure Orders – and therefore, under the appropriate construction of the virus or other exclusions, the purported exclusion cannot apply.

79.     Additionally, the exclusions are overly broad and violate public policy. It is against public policy for an Illinois-licensed insurance carrier such as Hartford to exercise the privilege of collecting premiums in Illinois in exchange for such broadly-worded and sold "all-risk" coverages and then attempt to exclude coverage on the ill-based, cursory and conclusory arguments Defendant has interposed in denying Plaintiff coverage.

80.     Defendant's reliance on any purported virus or pollution exclusion fails.

## CLAIMS BY PLAINTIFF: OVERVIEW

81.     The conduct set forth at length above constitutes Defendant's breach of the Policy contract. Plaintiff has sustained damages as a result of that breach, in the form of substantial Business Income losses and damage that continue to mount, including Extra Expense.

82.     By engineering this scheme to avoid its obligations under the Policy, Defendant breached its contract and exhibited bad faith by putting itself at a tremendous economic advantage over practically all other American business enterprises who honor their contractual obligations and continue to carry this nation through the current crisis. Defendant is retaining and lucratively investing claims dollars it would have to pay out, or premium dollars it would have to rebate, if it chose to follow the law.

83.     Defendant has engaged in consistent misconduct across its claims handling in this time of crisis. Defendant's reflexive denial of claims by Plaintiff and thousands of other insureds at their time of need is arbitrary and unreasonable, inconsistent with the facts and plain language of the Policy, and flies in the face of well-established science.

84.     Defendant's denials were driven by a desire to preempt its own financial exposure to the economic fallout resulting from the Closure Orders, rather than to initiate, as Defendant is obligated to do,

a full and fair investigation of the claims and a careful review of the Policy Defendant sold in exchange for valuable premiums.

85.    Defendant improperly shifted the burden on Plaintiff to retain counsel, initiate litigation (such as this), and expend great time, money, and opportunity cost.  Instead of taking care of its employees and struggling business, Plaintiff has been forced to come to court to compel Defendant to honor its contractual obligations.

86.    Plaintiff files this lawsuit for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses it has sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155 – which entitles Plaintiff to penalties and attorneys' fees. Alternatively, Plaintiff, on behalf of itself and all others similarly situated, chooses to stand up against Defendant who would (as alluded to above) "have its cake and eat it too" and be unjustly enriched by retaining premium dollars it should disgorge if Defendant prevails on its coverage denials (Count IV, unjust enrichment).  This same conduct also violated the Illinois Consumer Fraud and Deceptive Business Practices Act and the similar laws of other states where Defendant sells insurance. (Count V).  Fed. R Civ. P. 8(d)(2), (3).

## COUNT I

### (DECLARATORY JUDGMENT)

87.    Plaintiff incorporates by reference, as if fully set forth herein, the allegations set forth in paragraphs 1 to 86 above.

88.    The Policy is an insurance contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay losses and damages for claims covered by the Policy, including, but not limited to, Business Income losses and losses incurred as a result of the Closure Orders that forced Plaintiff to close its business.

89.    Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

19

90.     Defendant has arbitrarily, unreasonably, and without justification refused to reimburse Plaintiff for any losses and damages incurred in connection with the covered business losses set out at length above.

91.     An actual case or controversy exists regarding the Plaintiff's rights and Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of losses and damages incurred by Plaintiff.

92.     Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following: (a) Plaintiff's losses and damages are insured under the Policy; (b) Defendant has waived any right it may have had to assert defenses to coverage or otherwise to seek to bar or limit coverage for those losses and damages by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and (c) Defendant is obligated to pay Plaintiff for the full amount of the losses and damages incurred and to be incurred in connection with the covered business losses and damages up to the applicable limits of coverage.

**COUNT II**

**(BREACH OF CONTRACT)**

93.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations set forth in paragraphs 1 to 86 above.

94.     The Plaintiff's Policy is an insurance contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay losses and damages for claims covered by the Policy, including, but not limited to, Business Income losses and damages and losses and damages incurred as a result of the Closure Orders, as set forth at length above.

95.     Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage, and yet Defendant has abrogated its insurance coverage obligations.

96.     By denying coverage for the business losses and damages incurred by Plaintiff and set forth at length above, Defendant has breached its coverage obligations under the Policy.

97.     As a result of Defendant's breaches of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT III

### (STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE)

98.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations set forth in paragraphs 1 to 86 above.

99.     Upon receipt of Plaintiff's claim and (upon information and belief) upon receipt of each and every claim related to the Closure Orders, Defendant denied the claims, without conducting any investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. *See* 215 ILCS 5/154.6.

100.     To make matters worse, based on information and belief, Defendant stated on its website that its customers with business insurance did not qualify for coverage due to COVID-19 without performing any investigation into the relevant facts or law.[16]  Defendant formulated and executed on a plan to discourage policyholders such as Plaintiff from submitting claim notifications in order to avoid any responsibility for its policyholders' staggering losses and damages, in violation of Illinois law.

101.     Defendant's denials were vexatious and unreasonable.  Defendant's actions disregarded or ignored facts underlying the claims, ignored the law, and ignored the science designed to save human life.

102.     Defendant's denials constitute "improper claims practices" under Illinois law – namely Defendant's: (1) refusal to pay Plaintiff's claims without conducting reasonable investigations based on all available information; and (2) failure to provide reasonable and accurate explanations of the bases in its denials.  *See* 215 ILCS 5/154.6 (h), (n).

103.     Defendant has neither offered any justifiable reason for its denials, nor raised any bona fide disputes as to the whether the claims were covered.

104.     Therefore, pursuant to 215 ILCS 5/155, Plaintiff requests that, in addition to entering a judgment in favor of Plaintiff and against Defendant for the amount owed under the Policy at the time of

---

[16] The Hartford, https://www.thehartford.com/coronavirus/businesses (accessed Sept. 18, 2020).

judgment, the Court enter a judgment in favor of Plaintiff for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000. *See* 215 ILCS 5/155.

105.    Plaintiff further requests that the Court enter a judgment in favor of Plaintiff and against Defendant in an amount equal to the attorneys' fees and costs incurred by for the prosecution of this coverage action against Defendant, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## PRAYER FOR RELIEF ON COUNTS I-III

**WHEREFORE,** Plaintiff G.O.A.T. Climb and Cryo, LLC prays that this Honorable Court enter an order and judgment in its favor and against Defendant Twin City Fire Insurance Company as follows:

(a) Enter a declaratory judgment on Count I of the Complaint in favor of Plaintiff and against Defendant declaring that: losses by Plaintiff incurred in connection with the Closure Orders and the necessary interruption of its businesses are insured losses and damages under their respective Policy; that Defendant has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for the losses and damages of Plaintiff by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and that Defendant is obligated to pay Plaintiff for the full amount of the losses and damages incurred and to be incurred in connection with the covered business losses and damages related to the Closure Orders;

(b) Enter a judgment on Count II of the Complaint in favor of Plaintiff and against Defendant and award damages for breach of contract in an amount to be proven at trial;

(c) Enter a judgment on Count III of the Complaint in favor of Plaintiff and against Defendant in the amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000;

(d) Enter a judgment in favor of Plaintiff and against Defendant in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against Defendant pursuant to 215 ILCS 5/155, such amount to be established at the conclusion of this action;

(e) Award Plaintiff and against Defendant prejudgment interest, to be calculated according to law, to compensate it for the loss of use of funds caused by Defendant's wrongful refusal to pay Plaintiff what it is rightfully owed under its respective Policy; and,

(f) Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

<strong><u>COUNT IV (in the alternative)</u></strong>

<strong><u>CLASS ACTION</u></strong>

<strong>UNJUST ENRICHMENT BY COLLECTION / RETENTION OF PREMIUM</strong>

106.    Plaintiff incorporates by reference, as if fully set forth herein, the allegations set forth in paragraphs 1 to 86 above.

107.    Plaintiff for itself, and on behalf of all others similarly situated, alleges this class action claim against Defendant in the alternative (see Fed. R. Civ. P. 8(d)(2), (3)) and as follows:

108.    This is a class action count brought in diversity between the Plaintiff Class and Defendant, wherein jurisdiction lies under 28 U.S.C. § 1332.

109.    If Defendant's denials of coverage for Plaintiff's claims for business interruption coverage are upheld, then Defendant has been unjustly enriched in the amount of excess premium for business interruption coverage they have charged and retained while Plaintiff's property has been shut down or operationally impaired as the result of the Closure Orders. These premiums should be disgorged to all affected members of a class of Defendant's insureds, as set out below.

110.    Defendant has priced and charged premiums for the Plaintiff's Policy (and the policies of the members of the Nationwide Class) on the basis of their insured properties operating as fully functional business establishments. Accordingly, the insured risks included the prospect of having to pay claims for

lost business income at levels commensurate with fully operational businesses, and for other risks (such as on liability insurance claims among others) commensurate with fully operational businesses.

111.    During the time period while Plaintiff's property has been lost, damaged, shut down or otherwise operationally impaired by the Shutdown Orders, Defendant's risk of having to pay other claims under their "all-risk" policies, including business interruption claims and others, has been reduced in many instances to zero and in all instances by substantial monetary amounts. The Policy contains provisions making Defendant Insurers liable to pay business interruption loss only to the extent it would not have been incurred anyway, such as the provision taken below from the Policy:

(c) Business Income means the: (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred . . . .

(Ex. A1, p. 33; Ex. A2, p. 36) (Special Property Coverage Form SS 00 07 07 05 p. 10 of 25).

112.    For example, if Plaintiff's establishment was to suffer a total fire loss tomorrow, Defendant would decline to pay any business interruption loss that would have been incurred anyway as the result of the Closure Orders.

113.    Defendant knows all this, yet it has  intentionally continued to retain, charge and collect as "earned"—and Plaintiff and the Class have continued to pay including on renewals—premiums for which Defendant, according to their own self-serving justifications for denying coverage, assumed no commensurate risk.

114.    Defendant has been unjustly enriched, at Plaintiff's and the Class' expense, and should be required to disgorge to Plaintiff and each Class member the full amounts of excess premium for business interruption coverage and other coverages they have unlawfully charged, collected, and retained, as equity and good conscience require. Defendant's misconduct in this respect has been willful, wanton, and in bad faith.

115.    This action may properly be maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23(b) (3). Plaintiff brings this action on behalf of itself and on behalf of a Nationwide Class (as

defined herein) of similarly situated businesses that have been irreparably harmed by Defendant, further defined as follows:

116.    This is a Nationwide Class of similarly situated persons defined as follows: all businesses in the United States who are insureds of Defendant under commercial insurance policies and who have experienced a complete or partial shutdown of their business operations as a result of a Closure Order issued by a State or local governmental authority on or after March 1, 2020, to the present.

117.    Excluded from this Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who had their claims in this matter adjudicated and/or otherwise released; and, (5) the legal representatives, successors, and assigns of any such excluded person.

118.    This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rule of Civil Procedure 23(b)(3). Plaintiff reserves the right to modify the Nationwide Class and the class period pursuant to discovery that is conducted hereafter.

119.    Plaintiff and all members of the Nationwide Class have been harmed by Defendant in a singular and common manner – they have been overcharged for premium for "all risk" commercial insurance policies and business interruption coverage during the current crisis, all to the unjust enrichment of Defendant.

120.    Numerosity: On information and belief, the Nationwide Class is so numerous that joinder of all individual plaintiffs is not practicable. The exact number of members of the Class is unknown and can only be ascertained through discovery because that information is exclusively within the possession, custody, and control of Defendant. However, on information and belief, Plaintiff estimates that there are tens of thousands of potential Class members (if not hundreds of thousands) because Hartford sells commercial insurance in many states generating billions in premium. Defendant is registered with the Illinois Department of Insurance and markets its policies to millions of Illinoisans and Illinois businesses,

as well as in other states. The members of the Class can be identified easily through records maintained by Defendant and/or by other means.

121. <u>Commonality and Predominance</u>: There are questions of fact and law common to the Plaintiff and the Class members which predominate over any questions relating to individual Class members. Some of the predominant, common questions include but are not necessarily limited to: 1) whether Defendant has been unjustly enriched in the amount of excess premium for "all risk" and business interruption coverage they have charged and retained while Plaintiff Class members' businesses have been shut down or operationally impaired as the result of Closure Orders; 2) whether Defendant has priced and charged premiums for Class members' policies on the basis of their properties operating as fully functioning businesses; 3) whether Defendant's risk of having to pay other commercial claims including business interruption claims has been reduced in many instances to zero and in all instances by substantial monetary amounts; 4) whether the Policies contain provisions making Defendant liable to pay business interruption loss and other claims only to the extent it would not have been incurred anyway; 5) whether Defendant has, knowing all this, continued to retain, charge and collect as "earned" premiums for which Defendant, according to their own self-serving justifications for denying coverage, assumed no commensurate risk; and 6) whether Defendant has, accordingly, been unjustly enriched.

122. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff's claims are typical of the Class and Plaintiff does not have any interests which are adverse to the other Class members. Plaintiff's claims are based on similar facts and the same legal theories as those of the Class members. Plaintiff has retained competent counsel, experienced in handling class actions, complex business transactions and litigating complex commercial disputes. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor counsel have any interests which might cause them to not vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interests of the members of the Nationwide Class.

123. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Nationwide Class because Plaintiff paid premium for "all risk" commercial insurance policies including business

interruption insurance and were shut down by Closure Orders, yet were never refunded or rebated their premium by Defendant. Plaintiff and all members of the Nationwide Class have thus similarly suffered harm arising from Defendant's violations of law as alleged herein.

124.     Appropriateness: Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy described herein because it permits a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence and effort. Class treatment is especially appropriate for the current controversy because it is the only practical means for Class members to receive redress given that the individual claims for refund of premium are likely not economically viable to pursue on an individual basis (as contrasted to their individual and sizeable business interruption claims, which Defendant, of course, has denied). The premium rebate damages suffered by each individual Class member likely are disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendant's conduct and practices. The disposition of the claims in a class action will provide a substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. A class action provides the benefits of fewer management difficulties, single adjudication, economy of scale and comprehensive supervision by a single court, and would result in reduced time, effort, and expense for all parties and the Court, and ultimately ensure the uniformity of decisions.

## COUNT V (in the alternative)

## CLASS ACTION

### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

125.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations set forth in paragraphs 1 to 86 and 106 to 124, above.

126.     Plaintiff for itself, and on behalf of all others similarly situated, allege this class action claim against Defendant in the alternative (see Fed. R. Civ. P. 8(d)(2), (3)) and as follows:

127. This is a class action count brought in diversity between the Plaintiff Class and Defendant, wherein jurisdiction lies under 28 U.S.C. § 1332. Plaintiff incorporates by references, as if fully set forth herein, the class action allegations set forth in Count IV, above.

128. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq* ("ICFA") and the similar laws of other states where Defendant sells insurance, provide protection to persons including Plaintiff and the members of the Nationwide Class by mandating fair competition in commercial markets for goods and services.

129. ICFA and the similar laws of other states where Defendant sells insurance prohibit any deceptive, unlawful, unfair or fraudulent business acts or practices using deception, fraud, false pretenses, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the employment of use of any deceptive practice described as a deceptive trade practice.

130. Defendant is a "person" as defined by ICFA and the similar laws of other states where Defendant does business.

131. Plaintiff and each member of the Nationwide Class are persons protected by ICFA and similar laws of other states where Defendant does business.

132. Defendant's sales of the Policies, collection of premiums, and administration of claims constitutes an activity covered by ICFA and similar laws of other states where Defendant does business.

133. Defendant's retention and collection of full and undiscounted / unrebated premiums, including (but not limited to) upon renewal of policies, under the circumstances pled herein wherein the Defendant did not take on commensurate risk supporting those premiums, from businesses affected by Closure Orders, are deceptive and unfair acts or practices prohibited by ICFA and the similar laws of other states where Defendant does business.

134. Defendant violated ICFA and the similar laws of other states where Defendant does business when it misrepresented and omitted facts regarding the premium charged (at a full and undiscounted / unrebated rate) and the commensurate risk actually taken on and the coverage actually

28

afforded (including but not limited to that Defendant would not pay for business interruption losses for businesses whose income was already interrupted or reduced by Closure Orders).

135.    Defendant's conduct was knowing and intentional.

136.    Plaintiff and members of the Nationwide Class relied upon Defendant's misrepresentations and omissions when they purchased, paid on, continued and renewed their policies with Defendant.

137.    Defendant's misrepresentations and omissions pled herein were acts likely to mislead the Plaintiff and the Nationwide Class acting reasonably under the circumstances, and thus constitute unfair and deceptive practices in violation of ICFA and the similar laws of other states where Defendant does business.

138.    As a direct and proximate result of Defendant's violation of ICFA and the similar laws of other states where Defendant does business, Plaintiff and the members of the Nationwide Class have suffered harm in the form of excess premiums paid in exchange for their policies, because they paid more premium than what they otherwise would have paid had they known the truth – that Defendant was not assuming risk commensurate with those premiums charged.

139.    Defendant's practices set forth herein offend public policy, were and are immoral, unethical, oppressive and unscrupulous, and cause substantial injury to Plaintiff and the members of the Nationwide Class, who were protected by ICFA and the similar laws of other states where Defendant does business.

## PRAYER FOR RELIEF ON COUNTS IV AND V (in the alternative)

**WHEREFORE,** Plaintiff G.O.A.T. Climb and Cryo, LLC, individually and on behalf of all persons similarly situated, pray that this Honorable Court enter an order and judgment in its favor and against Defendant Twin City Fire Insurance Company as follows:

(a)   Finding that this action satisfies the prerequisites for maintenance of a class action set forth in Fed. R. Civ. P. 23(b)(3), and certifying the Class as defined above;

(b)   Designating Plaintiff as the representative of the Class and the undersigned counsel as Class Counsel;

(c) Entering judgment in favor of Plaintiff and the Class and against Defendant on the unjust enrichment claim (Count IV) set forth above in an amount to be proven at trial;

(d) Entering judgment in favor of Plaintiff and the Class and against Defendant on the claim for violation of ICFA and the similar laws of other states where Defendant does business (Count V), including compensatory damages and punitive damages as permitted by law and in an amount to be proven at trial;

(e) Awarding Plaintiff and the Class pre-judgment interest, their court costs, expenses, and reasonable attorneys' fees; and,

(f) Awarding Plaintiff any such other and further relief that this Court deems necessary and just.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: September 23, 2020

Respectfully Submitted,

FUKSA KHORSHID, LLC


*/s/ William E. Meyer, Jr.*

William E. Meyer, Jr.

*Attorneys for Plaintiff and for the Class*

FUKSA KHORSHID, LLC
William E. Meyer, Jr. (ARDC No. 6207345) of counsel
Lucas M. Fuksa (ARDC No. 6277498)
Lema A. Khorshid (ARDC No. 6283237)
Vincent P. Formica (ARDC No. 6319168)
200 W. Superior, Suite 410
Chicago, IL 60654
T: 312.266.2221
F: 312.266.2224
william@fklawfirm.com
lucas@fklawfirm.com
lema@fklawfirm.com
vince@fklawfirm.com